IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NORTHWEST INFRASTRUCTURE
LLC,

        Plaintiff,

    v.

CITY OF PORTLAND, et al.,

        Defendants.

Case No. 3:21-cv-00843-MO

OPINION AND ORDER

MOSMAN, J.,

This matter comes before me on two motions to dismiss: one from Prosper Portland [ECF 7], the other from the City of Portland [ECF 13]. For the reasons given below, I GRANT Prosper Portland's motion to dismiss and DENY the City's motion as moot.

## BACKGROUND

Plaintiff Northwest Infrastructure LLC is an Oregon company that provides general contracting services. Starks Decl. [ECF 2] Ex. 1 [hereinafter Compl.] ¶ 6. It brings this action alleging defendants unlawfully interfered with its bid on a government contract. *Id.* ¶¶ 59–118. Among those defendants is the Portland Development Commission, also known as Prosper Portland, a government agency that oversees public bidding on behalf of the city of Portland, Oregon. Also listed as defendants are the City of Portland, four named Prosper employees, and five unnamed Prosper employees.

Northwest Infrastructure's allegations stem from a request for proposals ("RFP") issued by Prosper in February 2020. Compl. ¶ 16. This RFP solicited bids from public contractors on a contract ("the Contract") to demolish United States Postal Service facilities and treat surrounding soil that had been contaminated. *Id.* After the deadline for submissions passed, Prosper assembled an evaluation committee to determine which company would receive the Contract. *Id.* ¶¶ 18, 24. This evaluation committee awarded the Contract to NW Demolition, one of Northwest Infrastructure's competitors. *Id.* ¶ 24. However, upon discovering NW Demolition's bid was based in part on incorrect information, Prosper convened a second evaluation committee. *Id.* ¶ 27. The second evaluation committee conducted a thorough selection process, requesting new proposals from NW Demolition and Northwest Infrastructure, interviewing representatives from each contractor, and holding multiple committee meetings. *Id.* ¶¶ 29–33. The committee translated its findings into scores for the two bidders: NW Demolition received a score of 614 and Northwest Infrastructure received a score of 615. *Id.* ¶ 34.

Now months into its decision-making process, the second evaluation committee sent an email informing the bidders that the committee would reconvene to "rediscuss" the project given the proximity in scores. *Id.* ¶ 38. Despite reconvening, the second evaluation committee's scores remained unchanged. *Id.* ¶ 41. Shortly thereafter, Prosper disbanded the second evaluation committee and formed a third evaluation committee. *Id.* ¶ 42. This evaluation committee decided to award the Contract to NW Demolition. *Id.* ¶ 44. However, following challenges from Northwest Infrastructure, Prosper decided to cancel the RFP entirely, awarding the contract to neither bidder. *Id.* ¶¶ 51–55.

Northwest Infrastructure alleges six claims for relief arising from Defendants' participation in the decision to award the Contract to NW Demolition. *Id.* ¶¶ 59–118. The claims are as follows:

(1) a 42 U.S.C. § 1983 substantive due process claim; (2) a § 1983 procedural due process claim; (3) a race-based § 1983 equal protection claim; (4) a "class-of-one" § 1983 equal protection claim; (5) a 42 U.S.C. § 1981 claim; and (6) an intentional interference with economic relations claim. Claim One through Claim Five are against the City and Prosper (jointly, "Municipal Defendants"). Claim Six is against Daniel Spero, Nick Ioanna, Kimberly Branam, Elise Hendrickson, and Does 1–5 (jointly, "Individual Defendants").

Prosper and Individual Defendants move to dismiss all claims. Prosper Mot. to Dismiss [ECF 7] at 8. The City joins this motion, but also moves to dismiss itself from the case on separate grounds. Portland Mot. to Dismiss [ECF 13] at 3.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.     Consideration of External Documents

As a preliminary matter, Prosper asks that I consider two external documents in evaluating its motion to dismiss: the RFP it issued in February 2020, Starks Decl. [ECF 8] Ex. A [hereinafter

3 – OPINION & ORDER

"RFP"], and relevant sections from the Local Contracting Review Board Administrative Rules ("LCRB"), Starks Decl. [ECF 8] Ex. B [hereinafter "LCRB"].

Generally, review on a motion to dismiss is limited to the complaint itself. If a court relies on materials outside the pleadings to make its ruling, it must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). But the court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908–09; *see also Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

A document is incorporated by reference if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claims." *Ritchie*, 342 F.3d at 908. And courts may take judicial notice of facts that are "not subject to reasonable dispute," including "the records and reports of administrative bodies." *Id.* at 908 (internal quotations omitted).

The complaint references the RFP repeatedly. *See, e.g.,* Compl. ¶¶ 4–5, 11, 16–21, 23–25, 45–46, 55–56, 70, 82–83, 90, 101–02, 116. The LCRB is mentioned but a couple of times. *Id.* ¶¶ 17, 53. However, as an administrative record, the content of the LCRB is not currently in dispute. Indeed, Northwest Infrastructure does not object to my consideration of them for the purposes of this motion.[1] Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 2. As such, I may consider both the RFP and LCRB for the purposes of this motion.

---

1. Though it does not challenge the LCRB's authenticity for the purposes of this motion, Northwest Infrastructure reserves its right to challenge the application and validity of the copy of the LCRB provided by Prosper following discovery. Resp. to Prosper Mot. to Dismiss [ECF 9] at 2.

4 – OPINION & ORDER

### II. Claims One and Two: The Due Process Claims

Prosper argues Northwest Infrastructure's due process claims should be dismissed because Northwest Infrastructure did not have a constitutionally protected interest in the Contract it bid on. Prosper Mot. to Dismiss [ECF 7] at 11–20. Prosper also contends that dismissal of the procedural due process claim is appropriate because Northwest Infrastructure does not allege it was deprived of its ability to protest Prosper's decision not to award it the Contract. *Id.* at 20–21. Because I find that Northwest Infrastructure did not have a protected property interest in the Contract, I need not address Prosper's procedural argument.

#### A. Public Contracts as Protected Property Interests

A successful claim under the Due Process Clause of the Fourteenth Amendment must allege the plaintiff was deprived of a constitutionally protected interest. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998); *Nunez v. City of Los Angeles*, 147 F.3d 867, 874 (9th Cir. 1998). Prosper argues that federal and Oregon law preclude an unsuccessful bidder from acquiring a protected property in a public contract. Prosper Mot. to Dismiss [ECF 7] at 13–20. In turn, Northwest Infrastructure contends it has alleged a sufficient "reasonable expectation of entitlement." Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 9 (quoting *Wedges/Ledges of Cal. Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994)). I agree with Prosper.

Property interests originate not from the Constitution itself, but from "an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Whether a state law creates a protected property interest depends on the level of deference that law gives to the decisionmaker in determining who receives the government benefit. *Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir. 2010) (citing *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980)).

5 – OPINION & ORDER

No entitlement exists when the decisionmaker has broad authority in deciding whether to dole out a benefit. *Allen v. City of Beverly Hills*, 911 F.2d 367, 370 (9th Cir. 1990). But an entitlement may exist if the statute contains "particularized standards or criteria." *Doyle*, 606 F.3d at 673 (internal quotations omitted).

### B. Prosper's Discretion in Awarding the Contract

The Oregon Public Contracting Code expresses broad goals and criteria in evaluating bids. For example, the Code emphasizes the need to "promote efficient use of state and local government resources" and "allow impartial and open competition." ORS 279A.015. These subjective standards are not the kind of "particularized standards or criteria" that form the basis of an entitlement. *Doyle*, 606 F.3d at 673 (internal quotations omitted).

Likewise, the RFP gave significant discretion to Prosper in determining whether to award the Contract. The RFP explains that Prosper would award the Contract to the "highest-ranked responsive and responsible proposer" based on scores in several subjective categories, such as work experience and references. RFP at 21–22. Critically, the RFP allowed Prosper to modify significant aspects of the selection process, empowering Prosper to request additional proposals, interviews, and modify scores it had given previously. *Id.* Prosper even had authority to modify or even cancel the RFP itself. *Id.* at 11 ("Prosper Portland, in its sole discretion, reserves the right to modify any matter contained in this RFP; cancel or suspend this RFP or reject any or all proposals received in response to this RFP...."). Accordingly, the RFP did little to constrain Prosper's discretion in deciding to whom it should award the Contract, indicating no entitlement exists. *Allen*, 911 F.2d at 370.

### C. Prosper's Discretion After Determining the Highest-Ranked Responsive and Responsible Proposer

Northwest Infrastructure argues that Oregon law and the RFP deprived Prosper of its discretion after the second selection committee gave Northwest Infrastructure the highest bidding score. Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 11. Under ORS 279C.410(8), a contracting agency must award a government contract to "the responsible proposer whose proposal is determined in writing to be the most advantageous to the contracting agency." The RFP contains a similar provision, stating that Prosper would "award the Contract to the highest-ranked responsive and responsible proposer." RFP at 22. In Northwest Infrastructure's interpretation, once Prosper determined that Northwest Infrastructure was responsive, responsible, and the highest-ranked proposer, Prosper's discretion vanished, and awarding the contract to Northwest Infrastructure became mandatory. Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 12.

To support its position, Northwest Infrastructure cites to *Pataula Elec. Membership Corp. v. Whitworth*, 951 F.2d 1238 (11th Cir. 1992). In *Pataula*, the Eleventh Circuit held that a bidder had a protected interest in a Georgia public works contract after the relevant state agency determined it was the "lowest responsible bidder." *Id.* at 1242. There, the relevant state law required the agency to award the contract to whichever entity it determined was the lowest responsible bidder. *Id.* Pursuant to that law, the Eleventh Circuit found that the lowest responsible bidder determination conferred a protected property interest upon that bidder. *Id.* at 1242–43.

However, *Pataula*'s scope is limited. In *Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1061–62 (11th Cir. 1996), the Eleventh Circuit refused to apply *Pataula* when the contracting agency retained discretion to reject "any proposal" and "refuse to execute any contract at all" after making its initial evaluations. Thus, *Pataula* is merely an application of the general rule in identifying

7 – OPINION & ORDER

protected property interests: there, Georgia law cabined the state agency's discretion, so the bidder acquired a protected property interest. *See Doyle*, 606 F.3d at 673. But when a government decisionmaker retains its broad authority—as the Miami contracting commission did in *Circa* after it received scoring recommendations—there is no protected property interest. *See Allen*, 911 F.2d at 370.

The RFP framework here echoes *Circa*, not *Pataula*. Here, Prosper maintained significant discretion *after* the second evaluation committee assigned its scores. Under the RFP, Prosper could still modify its evaluations, reject proposals, or cancel the RFP in its entirety, even after settling on scores for the proposals. RFP at 11–12. And though Oregon law generally requires a contracting agency to award public contracts to the highest-scoring proposer, ORS 279C.410(8), it allows contracting agencies to modify that standard in their requests for proposals, ORS 279C.410(5). Even more, after officially announcing the highest-ranked proposer, Oregon law gives contracting agencies discretion to terminate negotiations upon finding that "an impasse has been reached in negotiations." *Id.* At bottom, the second evaluation committee's assignment of scores did little to reduce Prosper's broad discretion under Oregon law and the RFP.

Because I find that neither Oregon law nor the RFP imposed significant restrictions on Prosper's decision-making, Northwest Infrastructure cannot show a protected property interest in the Contract. Accordingly, I DISMISS Northwest Infrastructure's Due Process claims with prejudice.

### III. Claim Four: The Class of One Claim

Northwest Infrastructure's fourth claim alleges Prosper discriminated against it as a class of one. Compl. ¶¶ 87–94. Under this theory of equal protection, an individual acting under color of law cannot treat individuals differently without a rational basis for doing so. *Village of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Prosper moves to dismiss on several grounds, including that class-of-one claims should fail as a matter of law in the context of public contract bidding under *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008). Northwest Infrastructure argues Prosper misunderstands *Engquist*. Though I decline to make a categorical rule that class-of-one claims cannot survive in the public contracting context, I agree with Prosper that *Engquist* precludes a class-of-one claim in this case.

### A. *Engquist* and Its Progeny

In *Engquist*, the Supreme Court concluded that "the class-of-one theory of equal protection does not apply in the public employment context." 553 U.S. at 598. The Court drew a distinction between state action that involved merely the enforcement of objective standards and acts "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id.* at 603. The former, the Court explained, are classifications that are expected to apply "'without respect to persons.'" *Id.* at 602 (quoting 28 U.S.C. § 453). But in the latter category, disparate treatment is expected because "treating like individuals differently is an accepted consequence of the discretion granted." *Id.* at 603. With this background in mind, the Court determined that the state's role as an employer fell into the latter category. *Id.* at 604–06. Specifically, the Court found employment decisions to be "often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 604.

Following the rationale of *Engquist*, several circuit courts have dismissed class-of-one claims in contexts where the state actor has broad discretion. *See Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327 (1st Cir. 2015) (casino licensing); *Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009) (police investigative decisions); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (prosecutorial discretion); *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269 (11th

Cir. 2008) (public contracting). In addressing the same question presented by this case, the Eleventh Circuit noted "'obvious' similarities between government employees and government contractors," namely that "'absent contractual, statutory, or constitutional restriction, the government is entitled to terminate [employees and contractors] for no reason at all.'" *Douglas Asphalt*, 541 F.3d at 1274 (quoting *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996)).

When declining to extend the *Engquist* rationale to new settings, circuit courts generally do so only after finding "objective constraints" limited state action in that context. *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009) (police investigative decisions); *see also Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 142–43 (2d Cir. 2010) (clinical laboratory licensing); *but see Franks v. Rubitschun*, 312 F. App'x 764, 766 n.3 (6th Cir. 2009) (finding *Engquist* unlikely to apply outside the context of public employment).

Though the circuit courts have interpreted *Engquist* with varying degrees of stringency, *compare Flowers*, 558 F.3d 794 (finding *Engquist* precludes class-of-one claims based on police investigatory decisions), *with Hanes*, 578 F.3d 491 (finding *Engquist* does not preclude class-of-one claims based on police investigatory decisions), the cases form a spectrum when read together. In a given context, the more discretion the government has, the less appropriate a class-of-one claim will be. Conversely, when government discretion is constrained by law, a class-of-one claim is more fitting.

### B. Whether the RFP Precludes a Class-of-One Claim

With this sliding scale in mind, I am reluctant to hold—as the Eleventh Circuit did in *Douglas Asphalt*—that class-of-one claims are unrecognizable in the public contracting context as a matter of law. However, given the immense discretion Oregon law and the RFP gave to Prosper, I find a class-of-one claim inappropriate here. Indeed, the RFP required Prosper to award the

Contract "based on a vast array of subjective, individualized assessments," such as the quality of each bidder's references, interview performance, and commitment to diversity. *Engquist*, 553 U.S. at 603; RFP at 21–22. Moreover, in the same way the State of Oregon had discretion to terminate its employees at will in *Engquist*, Prosper had the ability to terminate the RFP whenever it wanted. *Engquist*, 553 U.S. at 606; RFP at 11–12. Though some public contracting regimes may limit government discretion in such a way as to allow the formation of a class of one, this is not one of them.

Northwest Infrastructure asserts that Prosper lost its discretion when the second evaluation committee awarded Northwest Infrastructure with the highest score. Pl.'s Resp. to Def.'s Mot. to Dismiss [ECF 9] at 30–31. In Northwest Infrastructure's view, the RFP obligated Prosper to award it the Contract as the highest-ranked proposer. *See* RFP at 22. Yet, as I explained previously, Prosper had significant discretion in its operation of the RFP and maintained that discretion after the second evaluation committee calculated its scores. *See* ORS 279C.410(5); RFP at 11–12, 21–22.

I find that a class-of-one claim is a "poor fit" for the facts of this case. *Engquist*, 553 U.S. at 605. As a result, I DISMISS Northwest Infrastructure's class-of-one claim with prejudice.

**IV.    Claim Three: The § 1983 Racial Discrimination Claim**

Prosper moves to dismiss Northwest Infrastructure's 42 U.S.C. § 1983 equal protection race discrimination claim. Prosper claims that Northwest Infrastructure has failed to allege proof of discriminatory intent and that its claim therefore cannot stand. Prosper Mot. to Dismiss [ECF 7] at 21. Northwest Infrastructure asserts it has alleged sufficient proof to withstand a motion to dismiss. Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 21–25. I agree with Prosper.

To state a claim of disparate treatment—be it under the equal protection clause, Title VII, or § 1981—a plaintiff must allege the defendant acted with discriminatory intent. *Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 537 (9th Cir. 1982); *Flores v. Pierce*, 617 F.2d 1386, 1389 (9th Cir. 1980). A successful discrimination action must demonstrate a *prima facie* case under the burden-shifting test established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But because *McDonnell Douglas* dictates an "evidentiary standard, not a pleading requirement," a plaintiff need not meet the *McDonnell Douglas* burden-shifting test at the motion-to-dismiss stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*...is an evidentiary standard, not a pleading requirement."); *Austin v. Univ. of Or.*, 925 F.3d 1133, 1136–37 (9th Cir. 2019). Instead, a plaintiff need only make "sufficient, nonconclusory allegations plausibly linking" the adverse action taken by defendant to the plaintiff's protected class. *Austin*, 925 F.3d at 1138. Yet, as a "tool to assist plaintiffs," I find *McDonnell Douglas* helpful in determining whether Northwest Infrastructure has met its burden to allege discriminatory intent. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003); *see also* Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 21–25 (asserting the complaint alleges facts that could support an inference of discrimination under *McDonnell Douglas*).

Translating the *McDonnell Douglas* framework to the context of public contracting, a bidder may establish a prima facie case of discrimination by showing (1) that it is owned by an individual or group of a protected class; (2) it placed a qualifying bid on a public contract; (3) its bid fit the decisionmaker's criteria for selection better than the bid actually awarded the contract; and (4) the decisionmaker awarded the contract to a different bidder owned by an individual or group not of the plaintiff's protected class. *See T & S Serv. Assocs., Inc. v. Crenson*, 666 F.2d 722,

725 (1st Cir. 1981) (crafting a modified *McDonnell Douglas* framework for the public bidding context); *see also Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258–59 (1981) (holding a Title VII defendant need not show it hired an individual more qualified than the plaintiff).

The complaint meets the first two elements. It alleges that Northwest Infrastructure has been certified as a minority business, Compl. ¶ 6, and that Northwest Infrastructure made a qualifying proposal under the RFP. *Id.* ¶¶ 4, 27.

As to the third element, the complaint alleges that Northwest Infrastructure's proposal fit the RFP evaluation criteria better than NW Demolition's because it received a higher score from the second evaluation committee. *Id.* ¶ 34. Though Northwest Infrastructure's score was only one point higher than NW Demolition's, that single point nevertheless indicates that Northwest Infrastructure's proposal better fit the selection criteria than NW Demolition's. In a discrimination action, "'[t]he question is not whether [the plaintiff] in the abstract had better qualifications than the other candidates,'" but rather "'[t]he question is whether the other candidates are more qualified with respect to the criteria that [the defendant] actually employs.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) (quoting *Cotton v. City of Alameda*, 812 F.2d 1245, 1249 (9th Cir. 1987)). As alleged in the complaint, the proposal submitted by Northwest Infrastructure met Prosper's criteria better than any other proposal. Accordingly, the complaint has met the third element of the *McDonnell Douglas* framework.

However, the complaint crumbles at the fourth element. The complaint alleges Northwest Infrastructure's primary competition—NW Demolition—lacked *certification* demonstrating it was a "small and disadvantaged minority business." Compl. ¶ 25. But it does not allege that NW Demolition was a white-owned business, or of any other class different from its own.

Prosper contends that Northwest Infrastructure also fails to meet this fourth element because Prosper canceled the Contract before awarding it to NW Demolition. Reply to Prosper Mot. to Dismiss [ECF 14] at 14–15. But the complaint alleges that Prosper canceled the Contract in fear that it would have to award the Contract to Northwest Infrastructure if the administrative challenges it mounted were successful. Compl. ¶¶ 55–56. Such a remedial measure would itself support an inference of discrimination, indicating that Prosper would rather cancel the contract entirely than award it to Northwest Infrastructure.

Nevertheless, because Northwest Infrastructure has failed to allege that NW Demolition is not of its protected class, I find Northwest Infrastructure has not pled facts giving rise to an inference of discrimination under an adapted *McDonnell Douglas* framework.

Nor do I find that Northwest Infrastructure has alleged facts that would support an inference of discrimination through other means. Northwest Infrastructure contends that it has done so, listing off several ways in which Prosper appeared to favor NW Demolition. Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 23–24. But it fails to point to any facts that would indicate that race was the reason for such disparate treatment. Instead, Northwest Infrastructure points to a quote from Kelly Haines, a member of the second evaluation committee who believes Prosper acted with racial bias against Northwest Infrastructure. Compl. ¶ 40. Yet this statement alone cannot support an inference of discrimination—a witness's subjective commentary on facts is not itself a factual allegation.

Because Northwest Infrastructure has failed to make any nonconclusory allegations to support an inference of discrimination, I DISMISS its § 1983 racial discrimination claim. But because I find that Northwest Infrastructure could support such an inference with a clearer allegation that NW Demolition was not of its protected class, the dismissal is without prejudice.

### V.    Claim Five: The § 1981 Claim

Northwest Infrastructure brings a claim under 42 U.S.C. § 1981, alleging Prosper impaired its right to contract on the basis of race. Compl. ¶¶ 95–110. However, like a § 1983 action, a § 1981 action, requires the plaintiff to establish an inference of intentional discrimination. Indeed, actions brought under § 1981, § 1983, and Title VII all follow the same standards to prove intentional discrimination. *Gay*, 694 F.2d at 537 (9th Cir. 1982); *Cota v. Tucson Police Dep't*, 783 F. Supp. 458, 471 (D. Ariz. 1992). As such, my finding that Northwest Infrastructure had not alleged intentional discrimination to support its § 1983 race discrimination claim precludes a finding of intentional discrimination for its § 1981 claim. Consequently, I DISMISS Northwest Infrastructure's § 1981 claim without prejudice.

### VI.    Claim Six: The Intentional Interference Claim

Northwest Infrastructure's final claim is that Individual Defendants intentionally interfered with its contract with Prosper. Compl. ¶¶ 111–118. Under Oregon common law, a claim for intentional interference with economic relations must allege "(1) the existence of a professional or business relationship…, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 901 P.2d 841, 844 (Or. 1995). Prosper moves to dismiss, contending Northwest Infrastructure has failed to meet the third *McGanty* element, among others. Prosper Mot. to Dismiss [ECF 7] at 33–38. Again, Prosper has the better argument.

The third element of an intentional interference with economic relations requires the plaintiff to show that the alleged interference was perpetrated "by a third party." *McGanty*, 901 P.2d at 844. When a plaintiff alleges defendants interfered with a contract between the defendants'

employer and the plaintiff, the defendants do not constitute a third party if their allegedly tortious actions were within "the course and scope" of their employment. *Id.* at 845–47.

Individual Defendants are all Prosper employees.[2] Compl. ¶¶ 10–14. Northwest Infrastructure argues that Individual Defendants' actions against it were not within the course and scope of their employment because they "were motivated by the improper purpose of discriminating against Northwest Infrastructure" rather than an "intention to serve their employer." Pl.'s Resp. to Prosper Mot. to Dismiss [ECF 9] at 32 (citing Compl. ¶¶ 113, 115).

Yet despite these bare conclusions, the complaint contains no allegations that could support an inference that any of the Individual Defendants acted with an improper motive, let alone that such animus was their sole motivation. *See Boers v. Payline Sys., Inc.*, 918 P.2d 432, 435 (Or. 1996) (finding that corporate agents do not act within the scope of employment if their "*sole purpose is one that is not for the benefit of the corporation*" (emphasis added)). Therefore, the complaint fails to allege that Individual Defendants were third parties to a contract between Northwest Infrastructure and Prosper. Accordingly, I DISMISS Northwest Infrastructure's intentional interference with economic relations claim without prejudice.

## VII.   City of Portland's Motion to Dismiss

The City of Portland moves to dismiss itself from the case, arguing it was not involved in any of the disputed facts. Portland Mot. to Dismiss [ECF 13] at 3. Northwest Infrastructure asserts the City is liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Pl.'s Resp. to Portland Mot. to Dismiss [ECF 18] at 3. Under *Monell*, a municipal entity

---

2. Northwest Infrastructure says that the Doe Defendants are entirely unknown and may be individual or corporate entities. Compl. ¶ 14. However, because the Doe Defendants are listed as defendants for only the intentional interference with economic relations claim, I consider them as part of the Individual Defendants.

16 – OPINION & ORDER

may be held liable for a constitutional violation when it directs or ratifies an unconstitutional action. *Id.* at 690. Though such a theory may apply to the City, the complaint does not allege that the City directed Prosper to discriminate against Northwest Infrastructure, or even that it approved of such discrimination after-the-fact. *See generally*, Compl. Without more specific allegations against the City, the complaint does not support a *Monell* claim. My granting of Prosper's motion to dismiss technically moots the City's motion, but I instruct Northwest Infrastructure that any future pleading must contain more specific allegations against the City or else it will be dismissed as a defendant.

## CONCLUSION

For the reasons given above, I GRANT Defendant Prosper Portland's Motion to Dismiss [ECF 7] and DISMISS Claims One, Two, and Four from Plaintiff Northwest Infrastructure LLC's complaint with prejudice. I DISMISS Claims Three, Five, and Six with leave to amend. I DENY the City of Portland's Motion to Dismiss [ECF 13] as moot. Northwest Infrastructure's deadline to file an amended complaint is January 12, 2022.

IT IS SO ORDERED.

DATED this 14th day of December, 2021.

MICHAEL W. MOSMAN
United States District Judge